

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-22-2001

# Alkon v. United States

Precedential or Non-Precedential:

Docket 00-3439

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Alkon v. United States" (2001). *2001 Decisions.* Paper 8.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/8

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 19, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3439

THOMAS ALKON

v.

UNITED STATES OF AMERICA; G&C ENTERPRISES;
RIGGER & ERECTORS; LEBRON ASSOCIATES; SPILLIS
CANDELA AND PARTNERS, INC.

      United States of America,
      Appellant

Appeal from the District Court of the V irgin Islands
(Division of St. Croix)
(D.C. Civ. No. 95-cv-00139)
District Judge: Honorable John P. Fullam

Argued
December 4, 2000

Before: MANSMANN and ALITO, Circuit Judges,
and ACKERMAN, District Judge.*

(Filed: January 19, 2001)

_____

* Honorable Harold A. Ackerman, United States District Judge, sitting by
designation.

Gordon C. Rhea, Esquire (ARGUED)
Alkon, Rhea & Hart
2115 Queen Street
Christiansted, St. Croix
USVI 00820

 Counsel for Appellee

Curtin V. Gomez, Esquire
Office of United States Attorney
United States Courthouse
5500 Veterans Building, Suite 260
Charlotte Amalie, St. Thomas
USVI 00802-6924

Denise A. Hinds, Esquire
Office of United States Attorney
1108 King Street, Suite 201
Christiansted, St. Croix

David W. Ogden,
 Assistant Attorney General
James A. Hurd, Jr.,
 United States Attorney
Robert S. Greenspan
Daniel L. Kaplan (ARGUED)
 Attorneys, Appellate Staff
United States Department of Justice
Civil Division, Room 9114
601 D Street, N.W.
Washington, DC 20530-0001

 Counsel for Appellant

OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this personal injury action filed against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. S 1346, the United States appeals from an order of the District Court directing that the United States pay interest on a judgment entered against it at the rate set forth in the Virgin Islands Code, 5 V.I.C.S 426, rather than pursuant to

2

the generally applicable rate formula set forth at 28 U.S.C. S 1961. We are convinced that the calculation should have been undertaken in accordance with the pr ovisions of section 1961. Accordingly, we will reverse the order of the District Court.

I.

Thomas Alkon, a St. Croix attorney, was seriously injured in a fall on the stairs at the Federal Courthouse on St. Croix. Following a bench trial in an action br ought pursuant to the Federal Tort Claims Act, Alkon was awarded a judgment in the amount of $2,463,750. 1 The United States paid the judgment and interest on that judgment calculated according to the for mula set forth in 28 U.S.C. S 1961.

Thereafter, Alkon filed a motion in the District Court seeking to have interest due on the judgment r ecalculated at the higher 9% rate set in 5 V.I.C. S 426. The motion was granted. This timely appeal followed.

II.

This appeal requires that we deter mine which of two statutory provisions controls the calculation of interest applicable to the judgment awarded in this action. We begin by noting that in almost all instances, the calculation of interest on a judgment rendered against the United States in a civil action is governed by the pr ovisions of 28 U.S.C. S 1961.2

_____

1. The United States filed an appeal, and the order entering judgment in favor of Alkon was affirmed. Alkon v. United States, 185 F.3d 861 (3d Cir. 1999).

2. Prior to 1982, section 1961 provided that interest on civil judgments obtained in district courts would be calculated at the rate set by state law. The interest rate on FTCA judgments against the United States, however, was set at 4% by 28 U.S.C. S 2411. In 1982, Congress deleted section 2411's uniform rate applicable to FTCA judgments and made section 1961 applicable to such judgments. Congr ess also established a uniform rate for district court judgments under section 1961, changing the prior practice of determining inter est rates in accordance with state law. Section 1961 now reads as follows:

3

The District Court held that section 1961 should not
apply in this case because the District Court of the Virgin
Islands is not a "district court" for purposes of the statute.
Accordingly, the District Court found that interest on the
judgment awarded to Alkon should be calculated with
reference to 5 V.I.C. S 426, which provides that: "The rate of
interest on judgments and decrees for the payment of
money shall be 9 percent per annum."

_____

S 1961. Interest

(a) Interest shall be allowed on any money judgment in a civil
case
recovered in a district court. Execution therefor may be levied by
the
marshal, in any case where, by the law of the State in which such
court is held, execution may be levied for inter est on judgments
recovered in the courts of the State. Such interest shall be
calculated from the date of the entry of the judgment, at a rate
equal to the coupon issue yield equivalent (as deter mined by the
Secretary of the Treasury) of the average accepted auction price
for
the last auction of fifty-two week United States T reasury bills
settled
immediately prior to the date of the judgment. The Director of the
Administrative Office of the United States Courts shall distribute
notice of that rate and any changes in it to all Federal judges.

(b) Interest shall be computed daily to the date of payment except
as provided in section 2516(b) of this title and section 1304(b) of
title 31, and shall be compounded annually.

(c)(1) This section shall not apply in any judgment of any court
with respect to any internal revenue tax case. Interest shall be
allowed in such cases at the underpayment rate or overpayment rate
(whichever is appropriate) established under section 6621 of the
Internal Revenue Code of 1986.

(2) Except as otherwise provided in paragraph (1) of this
subsection, interest shall be allowed on allfinal judgments against
the United States in the United States Court of Appeals for the
Federal [C]ircuit, at the rate pr ovided in subsection (a) and as
provided in subsection (b).

(3) Interest shall be allowed, computed, and paid on judgments of
the United States Court of Federal Claims only as pr ovided in
paragraph (1) of this subsection or in any other pr ovision of law.

(4) This section shall not be construed to af fect the interest on
any
judgment of any court not specified in this section.

In reaching this conclusion, the District Court found that strict construction of the term "district court" as used in section 1961 is appropriate in light of the pr ohibition set forth in section 1961(c)(4): "[Section 1961] shall not be construed to affect the interest on any judgment of any court not specified in this section."

In order to determine whether Congr ess did, in fact, intend that the interest formula set forth in section 1961 not apply to FTCA judgments obtained in the District Court of the Virgin Islands, the District Court first looked to 28 U.S.C. S 451. That section reads in part:

> The term "court of the United States" includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International T rade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior.

> The terms "district court" and "district court of the United States" mean the courts constituted by chapter 5 of this title.

Chapter 5 of Title 28, 28 U.S.C. SS 81-144, provides for the constitution of the district courts of the fifty states, the District of Columbia, and Puerto Rico. As the District Court in this matter recognized,

> Conspicuously absent from the [Chapter V] list are the district courts of the Virgin Islands, Guam, and the Northern Mariana Islands, which were established pursuant to 48 U.S.C. SS 1611, 1424, and 1694, respectively.

Alkon v. United States, No. 139F/1995, mem. opinion at 2 (D.V.I. Feb. 15, 2000).

According to the District Court, since the District Court of the Virgin Islands was not constituted by Chapter 5, it is not a "district court" for purposes of 28 U.S.C. S 1961; that section, therefore, does not establish the applicable interest rate. The District Court summarized its holding as follows:

> While the matter is not altogether free fr om doubt, I conclude for several reasons that the corr ect rate of

5

post-judgment interest to be awarded in the District Court of the Virgin Islands is the 9% rate prescribed by 5 V.I.C. S 426. First, I must consider the mandatory language of 28 U.S.C. S 1961(c)(4), which limits the application of that section to only those courts specified therein. . . . Second, I am r eluctant to substantially invalidate a section of the Vir gin Islands Code absent some compelling reason to do so. 3 Finally, calculating interest on judgments against the United States at the same rate as other Virgin Islands judgments is consistent with the overall theme of the Federal Tort Claim Act itself, which is to r ender the government liable to the same extent as private tortfeasors.

Alkon v. U. S., mem. op. at 3.

III.

We agree with the District Court that r esolution of the issue raised in this appeal turns on whether Congress intended to mandate a technical reading of the term "district court" as used in 28 U.S.C. S 1961(a) when it provided in 28 U.S.C. S 1961(c)(4) that:"[t]his section [providing for the calculation of inter est rates] shall not be construed to affect the interest on any judgment of any court not specified in this section." W e do not, however, agree with the District Court's conclusion that the term "district court" must be read to exclude application of section 1961 to judgments entered against the United States pursuant to the FTCA in the District Court of the Virgin Islands.

In declining to adopt a reading of section 1961 which would make it inapplicable to the judgment obtained here, we are guided by our decision in In r e Jaritz, 151 F.3d 93 (3d Cir. 1998). There, we were asked to determine whether 28 U.S.C. S 155 authorized the Third Cir cuit Judicial

_____

3. A finding that interest, in this matter , should be calculated with reference to section 1961 would not invalidate 5 V.I.C. S 426. Section 426 would still be applied to calculate inter est on judgments rendered by the Territorial Court of the Vir gin Islands.

Council to transfer bankruptcy judges to the V irgin Islands. This determination hinged on a narrow question: "[W]hat did Congress intend when it used the ter m `judicial district' in section 155." Id. at 97. "Did it use the term in a generic sense to refer to the geographic area in which a district court exercises judicial authority in bankruptcy matters, or did it intend its scope to be limited to the geographic area in which an Article III district court exercises judicial authority over such matters." Id.

In order to answer this question, we first considered the statutory text, finding nothing that would "limit[ ] its scope to judicial districts having an Article III district court." Id. at 97. We next considered relevant legislative history, and again failed to find any indication to suggest"an intent to restrict the authorization conferred by section 155 to Article III districts." Id.

Not finding the statutory text or the legislative history to be dispositive, we "inquire[d] whether the broader or the narrower reading of `judicial district'[would] best service Congress's objectives in enacting Chapter 6 and section 155 in particular." Id. at 98. W e identified the objective of Chapter 6 as the creation of "a reor ganized bankruptcy system in which a specialized corps of full-time bankruptcy judges would assist district court judges in adjudicating bankruptcy matters." Id. We identified the objective of section 155 as the "efficient and effective use of that corps of full-time bankruptcy judges." Id. Interpreting Congress's use of the term "judicial district" in light of the purpose underlying the statute, we were unable to discern "any reason Congress might have wished to gar ner the efficiencies provided by [section 155] for judicial districts having an Article III district court and not for judicial districts having an Article IV district court which exercises the jurisdiction of an Article III by virtue of the legislation that created it." Id.

Finally, we addressed the dilemma posed by the application of 28 U.S.C. S 451's limited definition of a "district court" as a court constituted under Article III. We wrote:

> While we, of course, recognize that a definitional
> section like section 451 must presumptively be taken

7

as reflecting the Congressional intent when a defined term is used even in subsequent legislation, it is not controlling where consideration of the ter m's immediate context and its place in the overall Congressional scheme clearly indicate that it is being used not as a defined term of art but in its commonly understood sense.

Id. at 100.

We found support for our analysis of the applicability of section 451 in the Supreme Court's decision in Int'l Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 342 U.S. 237 (1952). There, the IL WU filed suit against Juneau Spruce in the District Court for the Territory of Alaska, alleging violations of the Labor Management Relations Act. Section 303(b) of that Act provided that an action for violation of its pr ovision could be brought "in any district court of the United States." Addressing whether the District Court of Alaska had jurisdiction over the matter, the Supr eme Court accorded great weight to the underlying purpose of the LMRA, concluding that:

> [S]ince Congress lifted the restrictive requirements which might preclude suit in courts having the district courts' jurisdiction, we think it is more consonant with the uniform, national policy of the Act to hold that those restrictions were lifted as r espects all courts upon which the jurisdiction of a district court has been conferred. That reading of the Act does not, to be sure, take the words "district court of the United States" in their historic, technical sense. But literalness is no sure touchstone of legislative purpose. The purpose here is more closely approximated, we believe, by giving the historic phrase a looser, mor e liberal meaning in the special context of this legislation.

342 U.S. at 242–43.

In Jaritz, we concluded that the analysis undertaken in Juneau Spruce applied with equal force:

> Although the term "judicial district" as defined elsewhere in the Judicial Code refers only to the

8

> specifically enumerated district courts, the purpose of
> section 155 -- ensuring maximally efficient use of
> judicial resources -- is "mor e closely approximated" by
> a more pragmatic and flexible construction of that term.4

151 F.3d at 101.

Recognizing that our resolution of the question presented
in Jaritz is relevant to the issue raised here, the District
Court in this matter cited Jaritz, r elying on our opinion to
support its conclusion that in light of the section 1961(c)(4)
limitation, the meaning of the term "district court" as used
in 1961(a) should be restricted to the definition set forth in
28 U.S.C. S 451. The District Court also concluded that
"calculating interest on judgments against the United
States at the same rate as other Virgin Islands judgments
is consistent with the overall theme of the Federal Tort
Claims Act itself, which is to render the gover nment liable
to the same extent as private tortfeasors." Alkon v. U.S.,
mem. op. at 4.

IV.

While we agree with the District Court that this matter
should be resolved with reference to the analysis in Jaritz,
we are convinced that faithful adherence to that analysis
better supports the view that the interest rate applicable to
the judgment in this case should be calculated in
accordance with section 1961 rather than pursuant to the
Virgin Islands Code. First, the language of section 1961
itself does not -- even considering the section c(4) limitation
-- unequivocally preclude its application to the District
Court for the Virgin Islands.

The legislative history of section 1961, too, is devoid of
any reference to the Virgin Islands and does not suggest
why Congress might have intended that FTCA judgments
reached in the District Court of the Vir gin Islands not be
subject to the provisions of section 1961. What scant
legislative history there is suggests the opposite. Section

_____

4. We then found that, section 155 notwithstanding, bankruptcy judges
could be authorized to serve temporarily in judicial districts of Article
IV
courts under the provisions of an alter nate statutory section.

1961 was amended, as part of the Federal Courts Improvement Act of 1982, to standardize the calculation of interest rates applicable to civil judgments obtained in federal court. Instead of continuing the practice of calculating interest on civil judgments in accordance with varying state formulae, Congress intended, in amending section 1961, to "set[ ] a realistic and [uniform] rate of interest on judgments" which would be "applicable to all litigation in the Federal courts." S. Rep. No. 97-275, at 30 (1981), reprinted in 1982 U.S.C.C.A.N. p. 11, 40 (emphasis added).5

Nothing in the legislative history supports the notion that Congress, in drafting the 1961(c)(4) limitation, had the District Court for the Virgin Islands or any other non-Article III court in mind. In view of the emphasis on rate uniformity, we cannot agree with the District Court that Congress intended that judgments in the Virgin Islands be subject to an interest rate not prevailing anywhere else in the federal system.

We are also convinced that under the approach outlined in Jaritz, the definition of "district court" and its use in section 1961 should be assessed, not, as the District Court found, in terms of the scope of the Federal Tort Claims Act, but in terms of section 1961 itself. The District Court wrote, "[C]alculating interest on judgments against the United States at the same rate as other Virgin Islands judgments is consistent with the overall theme of the Federal Tort Claims Act itself, which is to render the government liable to the same extent as private tortfeasors." Alkon v. U.S., mem. op. at 3. We focus instead on the legislative intent underlying section 1961 and are convinced that in amending that section Congress intended

_____

5. Although section 1961 does explicitly mention the Court of Appeals for the Federal Circuit and the Court of Federal Claims, it is likely that this
mention flows from the fact that these courts were created pursuant to the Federal Courts Improvement Act of 1982. Section 1961 was amended as part of that same legislation and sought, by reference to these courts,
to clarify certain aspects of their operation. We cannot infer from the specific mention of these courts that Congress intended that section 1961 not apply to judgments obtained in the District Court of the Virgin Islands.

10

to place all FTCA litigants obtaining judgments against the United States in a district court on the same footing; reading the term "district court" so as to exclude the District Court of the Virgin Islands would destroy the very uniformity that Congress sought to achieve.

Looking, as we did in Jaritz, at the statute itself, its legislative history, and the purpose underlying the enactment, we are satisfied that the ter m "district court" as it is used in section 1961 should be read "not as a defined term of art but in its commonly understood sense" to include the District Court of the Vir gin Islands. In re Jaritz, 151 F.3d at 100.

V.

Adherence to the analysis set forth in Jaritz provides sufficient reason for us to conclude that the interest calculation in this matter is controlled by the provisions of section 1961. In the interest of completeness, however, we note that factors outside the scope of our decision in Jaritz also favor application of section 1961.

First, the use of the term "district court" in 28 U.S.C. S 2414 which authorizes the "payment offinal judgments rendered by a district court . . . against the United States" and in 28 U.S.C. S 1304, which refers to section 2414 and appropriates amounts necessary to pay final judgments against the United States and interest ther eon has not been interpreted to exclude the District Court of the Virgin Islands. To adopt the District Court's r eading of section 1961 would, as the government points out,"accord[ ] the phrase `district court' one meaning as used in the provisions authorizing the United States to pay such judgments with interest, and another meaning as used in the [closely related] provision specifying the rate of interest owing on such judgments."

Second, we agree with the government that the District Court's determination that the Vir gin Islands Code controls the calculation of interest impinges upon the sovereign immunity for interest of the United States. The United States' waiver of sovereign immunity for inter est for purposes of the FTCA is set forth at 31 U.S.C. S 1304 and

11

is subject to strict construction. See, e.g., Andrulonis v. United States, 26 F.3d 1224, 1231 (2d Cir . 1994). The District Court's analysis of section 1961 does not consider the scope of the United States' waiver and, as the government argues, "subjects the United States to greater liability in [this] case," and "puts it at the mercy of the Virgin Islands legislature mor e generally, requiring the federal government to pay whatever rate of interest the Virgin Islands legislature may enact."

Finally, we find support for our application of section 1961 in the provisions of S 1614(b) which were enacted as part of the 1984 amendments to the Revised Or ganic Act of 1954. That section directs that the provisions of Title 28 "shall apply" to the District Court of the V irgin Islands "[w]here appropriate." W e examined the reach of this directive in Walker v. Gover nment of the Virgin Islands, 230 F.3d 82 (3d Cir. 2000), concluding:

> [H]aving vested the District Court of the V irgin Islands with the jurisdiction of the district courts of the United States, Congress intended all of the pr ovisions of Title 28, which speak to procedure, jurisdiction, venue, and particular proceedings (e.g., habeas), to apply, "[w]here appropriate," to the District Court of the V irgin Islands.

Id. at 87.6 Alkon has been unable to identify and we have not found any policy concern or other consideration that would render the calculation of interest in this matter pursuant to section 1961 "inappropriate." We agree with the government that, "there is no plausible basis for considering it `inappropriate' to apply the same rate of interest to the judgments rendered by the District Court of the Virgin Islands as is applied to judgments rendered by the district courts of the fifty States and Puerto Rico." In fact, in at least one Virgin Islands case, we applied section

_____

6. The legislative history of 48 U.S.C. S 1614(b) indicates that Congress intended that "the only exception to this extension [of Title 28 to the District Court of the Virgin Islands] will be those provisions which are in
conflict with specific legislation applicable to the Virgin Islands and those
relating to judges who are appointed during good behavior." 130 Cong. Rec. 23,790 (August 10, 1984) (statement of Sen. W eiker). The provisions of section 1961 do not fall into either category.

1961 to the award of post-judgment inter est in a civil case, never questioning that section's application. Dunn v. Hovic, 13 F.3d 58 (3d Cir. 1993).

In sum, we find that construction of the ter m "district court" in related statutes, concerns bearing on sovereign immunity, and the applicability of 48 U.S.C. S 1614(b) bolster our analysis of the factors identified in Jaritz, and provide additional support for applying section 1961 to calculate the amount of interest owed on the judgment awarded to Alkon.

VI.

We hold that interest on judgments obtained against the United States in the District Court of the V irgin Islands pursuant to the FTCA, should be calculated in accor dance with the provisions of 28 U.S.C. S 1961. Accordingly, we will reverse the order of the District Court.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13