

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-19-2008

# USA v. Brown

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4741

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Brown" (2008). *2008 Decisions.* Paper 1005.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1005

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4741
_____

UNITED STATES OF AMERICA

v.

LAMAR BROWN,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 02-cr-00083)
District Judge:  Honorable Yvette Kane

_____

Submitted Under Third Circuit LAR 34.1(a)
June 2, 2008

Before:  FISHER and JORDAN, *Circuit Judges*, and YOHN,[*] *District Judge*.

(Filed: June 19, 2008)
_____

OPINION OF THE COURT
_____

_____

[*]The Honorable William H. Yohn, United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

FISHER, *Circuit Judge*.

Lamar Brown appeals the District Court's denial of his motion to vacate a sentence of life imprisonment under 28 U.S.C. § 2255. For the reasons that follow, we will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

On March 6, 2002, municipal police officers executed a search warrant at Brown's residence. The search yielded a quantity of crack cocaine along with marijuana and cash. The search warrant was accompanied by an affidavit of probable cause, which described a controlled purchase of crack cocaine made by a confidential informant from Brown at the latter's residence five days earlier. The affiant was Officer John Evans, but the controlled purchase was actually organized by Lieutenant John Goshert.

On April 10, 2002, a grand jury indicted Brown on a charge of unlawful possession of controlled substances with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Prior to trial, Brown's attorney (Lori Ulrich of the Federal Public Defender's Office) filed a number of motions aimed at suppressing invalidly obtained evidence. The District Court denied the pretrial motions without conducting a hearing.

After a two-day trial, Brown was convicted, and he obtained new counsel (Gerald Lord). On June 19, 2003, the District Court sentenced Brown to a term of life

2

imprisonment. Shortly thereafter, Brown filed a notice of appeal, but then voluntarily withdrew it, so we dismissed the appeal on December 17, 2003. Apparently, Brown and Lord made a strategic decision that a collateral attack would be more likely to succeed.

Several months later, on July 9, 2004, Brown filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, which is a vehicle for prisoners in the federal system to argue that their sentence is subject to collateral attack. Brown therein alleged that Ulrich was ineffective for failing to adequately support her pretrial suppression motions. According to Brown, the confidential informant on which the officers had relied in obtaining the search warrant was lying, and Ulrich inadequately investigated this fact. The District Court held a hearing on February 3, 2005, in which various members of Brown's family (we include in this group Brown's mother, daughter, and former girlfriend), Brown himself, Ulrich, Lt. Goshert, and another officer testified. The parties were then directed to file additional supplements over the course of another year. On October 27, 2006, the District Court entered a memorandum and order denying Brown's § 2255 motion. Brown's timely appeal followed.

## II.

We exercise jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291 and 2253(a). "We review the District Court's decision de novo because both the performance and prejudice prongs of ineffective assistance of counsel claims present mixed questions of law and fact." *United States v. Cross*, 308 F.3d 308, 314 (3d Cir. 2002).

Brown argues that Ulrich provided ineffective assistance because she failed to plead facts in the motion to suppress and the motion to compel disclosure of the identity of the confidential informant, facts that purportedly would have resulted in the District Court's granting a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), which permits a defendant to challenge in a hearing the validity of an affidavit supporting a search warrant "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155-56.

In the context of a § 2255 collateral attack based on ineffective assistance of counsel, the movant must show (1) that counsel's performance fell below an objective standard of reasonableness, *Strickland v. Washington*, 466 U.S. 668, 688 (1984); and (2) prejudice. *Id.* at 692. Both prongs must be met for the movant to succeed, *Carpenter v. Vaughn*, 296 F.3d 138, 149 (3d Cir. 2002), and yet Brown satisfies neither.

With respect to the performance prong, "our analysis must begin with the strong presumption that counsel's performance was reasonable. The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *George v. Sively*, 254 F.3d 438, 443 (3d Cir. 2001) (internal quotation marks and citations omitted). Here, it is undisputed that Ulrich did file a motion to suppress and a motion for a *Franks* hearing based on the alleged lies of the

affiant, Officer Evans, contained in the affidavit supporting the search warrant. Brown argues that Ulrich should have done more because, according to him, no controlled buy ever took place at his house on March 1, 2002, he told Ulrich this fact, and Ulrich nevertheless did not interview Brown's family members who would have corroborated Brown's story.

We agree with the District Court that Ulrich's not "doing more" does not constitute performance that falls below an objective standard of reasonableness under *Strickland*. The test under *Franks* is whether the officers "knowingly and intentionally, or with reckless disregard for the truth," made one or more material false statements in the warrant affidavit. *See United States v. Rufus Brown*, 3 F.3d 673, 677 (3d Cir. 1993) (distinguishing between informants' untruthfulness and the affiant's intentional or reckless falsity, the latter of which is required to obtain a *Franks* hearing). It was objectively reasonable for Ulrich to believe that additional testimony from Brown's family members would not have contributed to her ability to "make a substantial preliminary showing" about the officers' state of mind when making their affidavit, especially where there is no indication that Brown's family members ever told Officer Evans or Lt. Goshert a story directly contrary to what the confidential informant provided, and yet the officers blindly went ahead with the version included in the warrant affidavit.[1]

---

[1]We do not suggest that Ulrich would have performed below an objective standard of reasonableness even had the officers talked to Brown's family members, for, given family members' likely bias, a competent attorney might still have left them out as

5

With respect to the prejudice prong, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). "Reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.*

Here, even had Ulrich done everything Brown now alleges that she should have done, the District Court would not have granted a *Franks* hearing because none of Brown's family members testified definitively (at the § 2255 hearing) that Brown did not actually engage in the precise drug transaction in question in his residence on the afternoon of March 1, 2002. Further, even had Brown's family members offered compelling testimony, Brown still could not show that the officers lied intentionally or made representations with reckless disregard for the truth. At best Brown's family members' testimony raises a credibility battle between themselves and the confidential informant, but such a battle has de minimis effect on what *Franks* requires Brown to establish with respect to the search warrant affiant, at least where there is no indication whatsoever that the officers conspired with the informant to lie.[2]

witnesses within her sound strategic discretion. We merely explain that even the one fact that would have connected the family members to the affiant's state of mind is missing here, so a fortiori, Brown fails to establish *Strickland*'s performance prong.

[2]We also agree with the District Court that further discovery and investigation would not aid Brown's § 2255 motion. Consistent with the theme of this opinion, we are convinced that an ultimate discovery that no controlled purchase took place on March 1, 2002 (assuming arguendo that were the truth) sheds no light on Ulrich's effectiveness as

6

III.

Because Brown cannot demonstrate ineffective assistance of trial counsel, which is the only basis for his appeal, the District Court did not err in concluding that his sentence is valid, and so we will affirm its order denying his motion under § 2255.

---

counsel under *Strickland*, on the affiant's state of mind under *Franks*, or on Brown's actual innocence with respect to the items found in his residence on March 6, 2002. Like the District Court, we are cognizant that we are dealing with a sentence of life imprisonment, but we are bound by § 2255 and its interpretive rules, which do not permit us to undo that sentence here.